Ronald J. Acacio v. Commissioner.
Acacio v. Commissioner
Docket No. 1313-69 "SC".
United States Tax Court
T.C. Memo 1969-290; 1969 Tax Ct. Memo LEXIS 4; 28 T.C.M. (CCH) 1495; T.C.M. (RIA) 69290; December 29, 1969. Filed *4 Abraham Davis, for the petitioner. Leonard A. Hammes, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1966 in the amount of $817.25. One of the issues raised by the pleadings has been conceded by petitioner, leaving for our decision whether petitioner is entitled to a deduction for dependency credits for his two sons for the year here in issue. There also remains in issue a claimed deduction for medical expenses. This deduction resulted primarily from expenditures by petitioner for medical services for his two sons. Therefore, the deductibility of such expenses is dependent on our determination with respect to whether petitioner contributed over one-half of the support of the children, thereby becoming entitled to the dependency credits and to a deduction for medical expenses paid on their behalf. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, an individual whose legal residence at the date the petition in this case was filed was University City, Missouri, filed his individual Federal income tax *5 return for the calendar year 1966 with the district director of internal revenue at Omaha, Nebraska. Sometime prior to 1965 petitioner and Carolyn Acacio (now Carolyn Knight and hereinafter referred to as Carolyn) were married. Two children were born of this marriage, Ronald Bruce who was born in 1960 and Brian David born in 1963. In 1965 petitioner and Carolyn began to live apart and on February 19, 1965, Carolyn filed in the Circuit Court of St. Louis County, Missouri a petition for separate maintenance. 1496 On June 7, 1965, the Court entered an order requiring petitioner to pay to Carolyn $50 per month for the support of Ronald Bruce and $50 per month for the support of Brian David. Custody of the children was awarded to Carolyn. In early 1965 the care of Brian David was turned over by Carolyn to a babysitter named Betty Link (hereinafter referred to as Betty). The arrangement was that Betty would keep Brian David day and night for 7 days a week at a charge of $60 per month. In late 1965 Betty and her husband decided to go to Florida for an extended visit with Betty's parents. Betty asked Carolyn for permission to take Brian David with them to Florida and Carolyn granted *6 this permission although at the time she was not aware of how extended a stay in Florida was contemplated or would result. Betty kept Brian David in Florida with her from late in 1965 until sometime in September of 1966. Carolyn and petitioner each made a visit to Florida to see Brian David during this period of time. The only payment made to Betty by petitioner for Brian David's support during 1966 was $60 which he paid for the month of November 1966 by check dated November 1, 1966. On December 3, 1966, Brian David went to live with petitioner's father and stepmother, Al and Lillian Acacio. On December 1, 1966, petitioner paid to Al and Lillian Acacio $100, of which $50 was allocable to support of Brian David and $50 to support of Ronald Bruce. Carolyn made most but not all of the $60 a month payments to Betty for the 10 months from January through October 1966. She made at least eight such payments totaling $480, and in addition purchased at least $20 worth of clothes for Brian David. Carolyn also paid at least $25 for medical expenses of Brian David. From the first of January until the first of September 1966 Ronald Bruce resided in Carolyn's apartment with her. Carolyn took *7 him each day to a babysitter by the name of Virginia Keeley (hereinafter referred to as Virginia). From Monday through Friday Carolyn would leave Ronald Bruce with Virginia at about 8:00 o'clock in the morning. Virginia would walk with Ronald Bruce to the Pershing School which was on Plymouth Street near Virginia's home. Ronald Bruce would attend kindergarten at the Pershing School, and Virginia would get him after school and keep him until 5:30 in the afternoon when Carolyn would pick him up. For this babysitting service, Carolyn paid Virginia $12 each week from the first of January to the end of August 1966. Around the first of September 1966 when it was time for Ronald Bruce to enter the first grade in school, he went to live with his grandparents, Al and Lillian Acacio. He was enrolled in the first grade in the Nathaniel Hawthorne School which was across the street from the Acacios' home in University City, Missouri. Ronald Bruce lived with his grandparents, the Acacios, from September 1, 1966, throughout the remainder of the year 1966. For the month of December 1966 petitioner paid $50 to the Acacios for Ronald Bruce's support. In addition during the calendar year 1966 petitioner *8 paid $243 for medical and dental expenses for Ronald Bruce and approximately $100 for clothes for him. Petitioner paid to Carolyn by check $106 as child support payments. He paid her an additional amount as child support of $170 making total direct child support payments by petitioner to Carolyn of $276. In May of 1966 Carolyn was behind in her rent payments and had an unpaid telephone bill. She wanted petitioner to advance her money for the payment of these bills. Petitioner did advance an amount not in excess of $130 to Carolyn to enable her to pay these bills but required her in return for the advance to sign a statement dated May 15, 1966, which read as follows: "I Carolyn Acacio do hereby state that I have received full payment for child support thru May 31st, 1966." This document was written out by petitioner and signed by Carolyn. In August 1966 petitioner paid $50 to the telephone company on a telephone bill of Carolyn's and in September 1966 paid $50 for rent on Carolyn's apartment to the real estate company from which Carolyn rented her apartment. During the first 8 months of 1966 Ronald Bruce lived with Carolyn in her apartment. The rent which Carolyn paid on the apartment *9 was $85 per month and the cost of utilities for the 8-month period, without consideration of the telephone bills paid by or with funds advanced by petitioner, was at least $100. Occasionally on weekends Virginia would keep Ronald Bruce for Carolyn and when she did Carolyn paid her an extra $4. Carolyn spent approximately $1 a week on entertainment for Ronald 1497 Bruce for the first 8 months of 1966. She spent $15 for medical bills for him in 1966 and approximately $240 for groceries for Ronald Bruce for the period January through August 1966. She also paid approximately $15 for clothes for Ronald Bruce during 1966. After Ronald Bruce went to live with his grandparents, Carolyn would have him stay with her on some weekends. When he was with her on weekends she would spend approximately $1.50 per weekend for food for him. Petitioner on his Federal income tax return claimed a dependency credit exemption for each of the two children. Respondent in his notice of deficiency disallowed the claimed exemptions on the grounds that petitioner failed to show that he contributed over one-half of the support of either of his children during the calendar year 1966. Ultimate Finding of Fact
*10 Petitioner has failed to show that he contributed over one-half of the support of either Ronald Bruce or Brian David during the calendar year 1966. Opinion The evidence in this case shows that petitioner made direct payments for the support of Brian David of $110 during the year 1966. We have also concluded that Carolyn made payments of $480 directly to the babysitter for the support of Brian David during the calendar year 1966 and that she spent $20 for clothes for Brian David and $25 for medical expenses, making total expenditures of $525 by Carolyn for Brian David's support. The combined payments by petitioner and Carolyn for support of Brian David during the year 1966 was $635. Apparently there were some months during 1966 when the babysitter, Betty, was not paid by either Carolyn or petitioner for the room, board, and other care of Brian David. Betty testified that except for the one month of November 1966 when she was paid for her babysitting services by petitioner, she received payment either in cash or by check from Carolyn. However, Carolyn testified that she did not send the payment to Betty every month while Betty had Brian David in Florida. Carolyn's testimony *11 is confusing. From this confusing testimony we have concluded that Carolyn sent approximately $400 or a little less to Betty in Florida and paid Betty in addition for the part of September after she returned from Florida with Brian David and for the month of October. Drawing what we consider to be reasonable inferences from Betty's testimony and the confusing testimony of Carolyn, we have concluded that Carolyn paid $480 to Betty for Brian David's support. If we consider the total support of Brian David for the year 1966 to be the $635 paid by Carolyn and petitioner toward his support, we conclude on the basis of this record that petitioner did not pay over one-half of this amount. The payments made by petitioner to Carolyn for child support were substantially less than the total of $50 per month for each child which he was obligated to pay under the court order. There was no designation by petitioner as to the support of which child such payments as he did make were to apply. We therefore assume that such payments as petitioner made were to be applied equally between the two children. We consider the $276 direct payment made by petitioner to Carolyn, as well as the $130 which he *12 advanced to her to procure the statement of May 15, 1966, that she had received full payment for child support through May 31, 1966, to constitute child support payments. However, in our view the $50 paid directly to the telephone company for Carolyn's telephone bill and the $50 paid directly to the real estate company for her rent could not properly be considered as child support payments. If we allocate one-half of the $406 to Brian David and add to this amount the $110 paid directly by petitioner, it is obvious that the resulting amount of $313 of support of Brian David paid by petitioner is less than one-half of the $635 total payments for Brian David's support made by Carolyn and petitioner. If it is considered that Brian David's support for the 2 months when neither Carolyn nor petitioner paid Betty should be added to the $635 paid by Carolyn and petitioner for Brian David's support, it is even more apparent that the amount paid by petitioner was less than one-half of the total support of Brian David for the year 1966. There is nothing in the record to show what it actually cost Betty to provide food, shelter, and other incidental services such as laundry and entertainment, *13 if any, for Brian David. It is apparent that there was some cost for these services and it might well be argued that for the 2 months during which Betty did not receive payments for her care of Brian David, she contributed to his support. However, since our only issue is whether petitioner has established that he contributed over one-half of Brian 1498 David's support during the year 1966, we need not attempt to determine with any degree of accuracy the total cost of Brian David's support. On the basis of this record petitioner has failed to establish that he contributed even one-half of the $635 paid by petitioner and Carolyn toward Brian David's support for the year 1966. Petitioner testified with respect to the buying of clothes for "the children" without designating which child, and also testified with respect to three medical bills that they were paid for "the children," without stating for which child they were paid. The checks which petitioner testified were in payment for clothes for the children were all dated during the time in 1966 that Brian David was in Betty's care. Betty testified that petitioner came to see Brian David only twice while she was caring for him and *14 on neither occasion did he bring him anything. We have therefore concluded that none of the checks which petitioner identified as having been drawn to department stores for clothes for the children were for clothes for Brian David and such of the checks as we thought reasonable to represent payment for clothing for petitioner's children, we have considered to be for clothing for Ronald Bruce. We also have noted that the payment made by petitioner of doctors' bills, except for those specifically stated by him to be for Ronald Bruce, were made at a time when the record shows Brian David would have been in Florida. Since it appears that the doctor and other medical bills paid were all to persons in St. Louis, we have concluded that all the medical bills which petitioner testified were payments for the children were payments for Ronald Bruce and not for Brian David. It would appear that if Brien David were taken to a doctor while he was in Florida, the doctor would have been a doctor located in Florida. Form the facts we have found, we have concluded, without considering any amount for the cost of room and food for Ronald Bruce for the months of September, October, and November, and *15 without considering any expenditures made by Carolyn during the period from September through December when she had Ronald Bruce on weekends or babysitting fees she paid on weekends during the first 8 months, that the total support of Ronald Bruce during the year 1966 was $1,508, composed of 35 weeks of babysitting payments to Virginia of $420, 8 months apartment rent of $340, 8 months utilities of $50, food for the 8 months of $240, clothes furnished by Carolyn of $15, doctor bills paid by Carolyn of $15, entertainment furnished by Carolyn of $35, doctor bills paid by petitioner of $243, clothes purchased by petitioner of $100, and room and board for the month of December paid by petitioner of $50. Of the $1,508 paid for Ronald Bruce's support, petitioner paid $393 directly for doctor bills, clothes, and room and board for the month of December. In addition petitioner paid $203 to Carolyn in child support payments composed of onehalf of the $406 payments made either directly or in advancing money to her to obtain the receipt which she signed on May 15, 1966. Therefore, without giving any consideration to the $100 which petitioner paid for the telephone bill and apartment rent for *16 Carolyn, petitioner's total payment toward Ronald Bruce's support was $596 which is less than one-half of the total cost of his support. It is therefore obvious that even if we consider some part of the $100 payment, or even all of it, to be for Ronald Bruce's support, petitioner's total payment would not be one-half of $1,508. However, in our view the $100 which petitioner paid to Carolyn's rental agent and for Carolyn's telephone bill cannot reasonably be considered to constitute child support payments. The question also arises as to who paid for Ronald Bruce's support during the months of September, October, and November of 1966. Petitioner testified that Ronald Bruce lived with his parents during the entire year 1966, and that Brian David lived with them during the last 4 months of that year and that he paid $100 a month to his parents for the support of the two children while they were both with his parents. However, other testimony clearly established that Ronald Bruce did not go to live with petitioner's parents until September 1966 and Brian David did not go to live with petitioner's parents until December 3, 1966. The only check in evidence indicating any payment by petitioner *17 to his parents for the support of the children during the year 1966 is the one check for the month of December 1966 for $100 for the support of both children. On the evidence, we therefore have concluded that neither petitioner nor Carolyn paid anything toward the room and board of Ronald Bruce for the months of September, October, and November 1966. However, if petitioner had paid the $50 per month for September, October, and November to his parents for Ronald Bruce's support, 1499port, it would be necessary to add this amount to the total support of Ronald Bruce and therefore the total support, not counting the weekend babysitting fees and the cost of food on weekends paid by Carolyn after Ronald Bruce went to live with petitioner's parents, would come to $1,658. If we assume petitioner paid the $150 and add this amount to the $596 of other payments we have found he made toward Ronald Bruce's support, the total amount of $746 is less than one-half of the $1,658 of support for Ronald Bruce without considering certain minor items paid by Carolyn. Upon consideration of all the evidence of record in this case and using our best judgment as to what we consider to be the most credible *18 of conflicting testimony, we have concluded that petitioner has failed to establish that he contributed more than onehalf of the support of Ronald Bruce during the calendar year 1966. Decision will be entered for respondent.